UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 98-21043

_____

TEXANS UNITED FOR A SAFE ECONOMY EDUCATION FUND; NATURAL
RESOURCES DEFENSE COUNCIL INC; THE SIERRA CLUB; RANFORD DENOON;
RON VAN OSDOL

Plaintiffs - Appellants-Cross Appellees,

V.

CROWN CENTRAL PETROLEUM CORPORATION

Defendant - Appellee-Cross Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____
April 6, 2000

Before POLITZ, GARWOOD, and DAVIS Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Two individuals and three environmental organizations (collectively "Texans United") brought this citizens suit under the Clean Air Act, 42 U.S.C. §§ 7401, et seq., seeking declaratory and injunctive relief, civil penalties and costs against Crown Central Petroleum Corporation ("Crown") for violations of emission standards for hydrogen sulfide and sulfur dioxide that occurred at its Pasadena, Texas refinery. The district court granted Crown's motion for summary judgment on grounds that an administrative proceeding instituted by a Texas agency precluded their suit. For the reasons that follow, we reverse and remand.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Texans United allege that Crown violated the Clean Air Act ("CAA") by exceeding the federally-prescribed limits for releases of sulfur dioxide into the atmosphere and for burning fuel gas containing hydrogen sulfide.[1] Specifically, Texans United's complaint alleges that Crown violated the federal emissions standards for sulfur dioxide and hydrogen sulfide, 40 C.F.R. §§ 60.104(a)(1) and (a)(2), as well as a number of operating and record keeping requirements. Texans United also complain that Crown has failed to comply with an administrative order and certain permits issued by the Texas Natural Resource Conservation Commission ("TNRCC").[2]

Crown operates a petroleum refinery in Pasadena, Texas. Those parts of Crown's refinery that emit sulfur dioxide must comply with Subpart J of the New Source Performance Standard ("NSPS"), which regulates sulfur dioxide and other emissions from refineries. 40 C.F.R. Subpart J. Among other things, Subpart J limits the concentration of sulfur dioxide that a refinery may emit and the concentration of hydrogen sulfide that can be present in gas burned at a refinery. 40 C.F.R. §§ 60.104(a)(1) and 60.104(a)(2)(i).

For many years, Crown's refinery regularly exceeded the emissions limits. In 1995, Crown, without admitting any violations, signed an Agreed Order ("1995 Agreed Order") that

---

[1] Burning hydrogen sulfide yields sulfur dioxide.

[2] TNRCC is the State agency primarily responsible for enforcing the CAA in Texas.

2

settled and concluded a TNRCC administrative enforcement action. That order required Crown to pay a penalty of $110,000 for violations from March 31, 1991 through August 8, 1993, and to implement measures to comply with the law.[3]

According to Texans United, Crown's own certified monitoring reports indicate that Crown has exceeded the federal limits on sulfur dioxide and hydrogen sulfide for 15,000[4] hours from May 1992 through March 31, 1998. The refinery has experienced major process upsets[5] nearly every month, which resulted in the release of hundreds of tons of excess sulfur dioxide into the air at its Pasadena plant. Texans United reside and travel near Crown's refinery, breathe the air that contains Crown's emissions, and complain about the odors and other effects of these emissions.[6]

In May 1997, Texans United notified Crown and TNRCC of their intent to sue Crown for continuing violations. On July 10, 1997, TNRCC wrote a letter to Crown stating its intent to commence an enforcement action if Crown did not comply. Texans United filed

---

[3] Crown installed monitoring and process control equipment at a cost exceeding $17,000,000.

[4] 15,000 hours = 625 days.

[5] According to Texans United, Crown's Pasadena plant's process upsets and shutdowns are caused by systemic corrosion in the Sulfur Recovery Unit. Texans United argue that Crown should emulate other refineries and install a backup Sulfur Recovery Unit.

[6] Sulfur dioxide and hydrogen sulfide are both extremely hazardous gases with pungent odors often described as similar to rotten eggs and burnt matches. American Lung Assn. v. EPA., 134 F.3d 388, 389 (D.C. Cir. 1998). The EPA has listed both sulfur dioxide and hydrogen sulfide as extremely hazardous substances. 40 C.F.R. Part 355, App. A.

their complaint in the district court on July 21, 1997, alleging violations from May 16, 1992 through December 14, 1996. In September 1997, Texans United notified Crown of their intent to allege additional violations for the period after December 14, 1996.

TNRCC commenced an administrative action on November 25, 1997, because of Crown's violations of the 1995 Agreed Order and other regulatory requirements. In December 1997, the citizens filed an amended complaint in the district court alleging additional violations from December 14, 1996 through September 30, 1997. On August 25, 1988, TNRCC and Crown reached a negotiated administrative consent order ("1998 Agreed Order") that required Crown, inter alia, to pay penalties of $1,055,425 and retain two independent expert consultants to review the operations of the entire plant, evaluate the causes of historic violations, and to recommend to the TNRCC additional remedial actions that Crown should take.

Crown filed two different motions for summary judgment based upon: (1) statutory preclusion; and (2) the standing requirements of Article III of the U.S. Constitution. Texans United filed a cross motion for summary judgment. The district court granted Crown's statutory preclusion motion on the ground that TNRCC's administrative enforcement actions against Crown precluded Texans United's suit. The court denied as moot Crown's motion for summary judgment predicated on Texans United's lack of standing. The court also denied Texans United's cross motion for summary judgment.

4

Texans United appealed and Crown filed a "conditional" notice of appeal challenging the court's denial as moot of its motion for summary judgment on standing.

## II. STANDING

The district court dismissed Texans United's suit on the grounds of statutory preclusion without resolving the issue of Texans United's standing. As a threshold matter of jurisdiction, however, we must determine whether Texans United have standing. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101-02, 118 S.Ct. 1003, 1016, 140 L. Ed.2d 210 (1998) (holding that a court must not "resolve contested questions of law when its jurisdiction is in doubt.").

An association has standing to bring a suit on behalf of its members when: 1) its members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); Friends of the Earth, Inc. v. Chevron Chemical Co., 129 F.3d 826, 827-28 (5th Cir. 1997). The individual plaintiffs can satisfy their constitutional requirement of standing by demonstrating that: 1) they have suffered an actual or threatened injury; 2) the injury is "fairly traceable" to the defendant's action; and 3) the injury will likely be redressed if the plaintiff prevails in the lawsuit. Lujan v. Defenders of Wildlife, 504 U.S.

5

555, 560 (1992); Friends of the Earth, Inc., v. Crown Central Petroleum, 95 F.3d 358, 360 (5th Cir. 1996). We address each of these requirements below.

A. "Injury in Fact"

Texans United submitted a number of affidavits, from the individual plaintiffs and its organizational members who reside in the Pasadena area (collectively "Affiants"). These Affiants state that they have suffered repeated exposure to sulfurous odors while in the home, in the yard, or driving through town. They generally describe these sulfurous odors as overpowering and capable of inducing physical discomfort. Based on these affidavits, Texans United argue that their enjoyment of their surroundings has been severely diminished and that, therefore, they have demonstrated a cognizable injury.

The Ninth Circuit has held that breathing and smelling polluted air is sufficient to demonstrate injury-in-fact and thus confer standing under the CAA. See NRDC v. EPA, 507 F.2d 905, 910 (9th Cir. 1974) (holding that there is no doubt that a plaintiff will suffer injury if compelled to breathe air less pure than that mandated by the Clean Air Act). Crown, although it does not concede that Texans United have suffered injury-in-fact, has cited no contrary authority nor has it offered persuasive analysis that challenges Texans United's assertions of injury-in-fact. We therefore conclude that Texans United have satisfied the "injury in fact" requirement for standing.

B. Traceability

6

Texans United argue that eyewitness and expert evidence demonstrates that their injuries are traceable to Crown's sulfur dioxide pollution in the community. Texans United's eyewitness accounts of traceability include testimony by the Affiants that they are able to trace the sulfur pollution they smell to Crown based on their direct observations of smoke and on their familiarity with Crown and other industries in the area. In addition, Texans United assert that these observations are confirmed by Crown's own personnel who conducted surveys of sulfur odors during periods of admitted noncompliance when they detected sulfur odors in the plaintiffs' community on at least four occasions. Finally, Texans United presented expert evidence relating to two process upsets at Crown.[7] According to the results of the expert's model, both upsets released several tons of sulfur dioxide into the ambient air and produced pollution concentrations that would have been detectable by some of the plaintiffs at their residences.

Crown argues that the "fairly traceable" standard cannot be satisfied in this case unless Texans United's injuries are linked to the exact dates where violations of regulatory standards are known to have occurred.

We disagree with Crown's proposed test for traceability because it conflates the issue of standing with the issue of actual liability. No relevant case law supports Crown's argument that

---

[7] Texans United's expert studied two process upsets at Crown, of the type that Texans United claim occur nearly every month at the refinery.

7

Texans United must connect the exact time of their injuries with the exact time of an alleged violation by Crown. Texans United presented circumstantial evidence, that includes: (1) Affiants' testimony that they observed smoke from Crown's plant in their neighborhood at the same time that they smelled sulfurous odors, (2) expert evidence that demonstrates that on certain days when Crown experienced process upsets, excess sulfur dioxide emissions were detectable in the neighborhood where some of the plaintiffs reside; and (3) evidence that demonstrated the frequency with which Crown exceeded the federal limits on sulfur dioxide emissions at its Pasadena plant. We agree with Texans United that this evidence sufficiently demonstrates that the injuries Texans United complain of are "fairly traceable" to Crown's emissions.

Moreover, we disagree with Crown's assertion that Texans United must, at this stage, establish that Crown violated the CAA on the occasions that Affiants suffered harm from the Crown emissions. Although, Texans United must ultimately establish causation if they are to prevail on the merits, they need not do so to establish standing. Therefore, we conclude that Texans United have demonstrated that their injuries are "fairly traceable" to Crown's pollution based on plaintiffs' evidence outlined above.

C. Redressability

Finally, Texans United must demonstrate that the injunction and penalties they have requested are capable of redressing their injuries. Crown argues that Texans United's injuries will not be redressed by an injunction requiring Crown to cease its violations

8

because: (1) an injunction against Crown will not reduce pollution from other sources not before this Court; and (2) the TNRCC has already obtained all necessary relief against Crown through its 1998 Agreed Order. Crown argues further that absent a credible claim for injunctive relief, Texans United's claims for civil penalties cannot alone remedy the alleged injuries.

Crown's first argument is not supported by the law in this Circuit. In Sierra Club v. Cedar Point Oil, 73 F.3d 546, 550 (5th Cir. 1996), an environmental group filed a citizen suit under the Clean Water Act ("CWA") against Cedar Point Oil ("Cedar point") seeking to prevent discharges of produced water into Galveston Bay. Cedar Point challenged whether plaintiff's injuries were traceable to Cedar Point's discharge because of the number of entities discharging chemicals into the bay. Id. at 558. This Court held that "it is sufficient for [plaintiff] to show that Cedar Point's discharge of produced water contributes to the pollution that impairs [plaintiff's] use of the bay." Id. Moreover, this Court affirmed the district court's entry of a modified injunction against Cedar Point. Id. at 579. Thus, under Cedar Point Oil, an injunction may be appropriate even if it will not prevent all discharges of the pollutants affecting the plaintiff.

Texans United vigorously dispute Crown's second argument that TNRCC has taken all the necessary action to bring Crown's refinery into compliance. Both the EPA and Harris County firmly opposed TNRCC's settlement with Crown in the 1998 Agreed Order. Moreover, Texans United produced a detailed expert report demonstrating that

9

TNRCC's remedies were inadequate, as well as affidavits from a former Crown operator and Harris County engineer demonstrating that Crown should install and operate a backup sulfur recovery unit to achieve and maintain compliance. Finally, throughout these proceedings, Crown has never demonstrated that it has achieved compliance with the federal emission limits for sulfur dioxide. Assuming arguendo that Texans United can prove at trial that they have suffered injuries, an injunction requiring Crown to cease its violations will--at least in part--redress these injuries.

Texans United also argue that civil penalties will redress their injuries by deterring Crown from violating federal air pollution standards. In a recent CWA case, the Supreme Court held that citizen suitors have standing to seek civil "penalties for violations that are ongoing at the time of the complaint and that could continue into the future undeterred." Friends of the Earth v. Laidlaw Envtl Serv's, Inc., --- U.S. ---, 120 S.Ct. 693, 707-08, --- L.Ed.2d --- (2000). Texans United's lawsuit is based on the premise that the 1998 Agreed Order does not go far enough to ensure that Crown will not violate federal emissions standards in the future. The summary judgment evidence supports this premise.

For the above reasons we conclude that Texans United have produced sufficient evidence to demonstrate standing to seek injunctive relief and civil penalties under the CAA. See id.

### III. STATUTORY PRECLUSION

This Court reviews de novo a district court's grant of summary judgment on the issue of statutory preclusion. See Urbano v.

10

Continental Airlines, Inc., 138 F.3d 204, 205 (5th Cir. 1998).

The district court concluded that 42 U.S.C. § 7604 precluded this action.  That statute provides in part that:

> No action may be commenced–
> (1) under subsection (a)(1) of this Section–
> ...
>    (B) if the Administrator or State has commenced and is diligently prosecuting a <u>civil action in a court of</u> the United States or <u>a State</u> to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

42 U.S.C. § 7604(b)(1)(B) (emphasis added).

In holding that TNRCC's administrative action precluded the instant suit, the district court rejected Texans United's argument that the plain meaning of the terms "civil action" and "court" do not include administrative or non-judicial proceedings.  Instead, the district court adopted the Third Circuit's interpretation of § 7604(b) and held that the term "court" is not limited to judicial tribunals; and that an administrative agency can be considered a "court" under § 7604(b) if it has the power to accord relief that is the "substantial equivalent" to that available in federal courts under the CAA.  See Baughman v. Bradford Coal Co., 592 F.2d 215, 217-19 (3d Cir.), cert. denied, 441 U.S. 961 (1979).

The district court found substantial equivalence in the remedy the TNRCC could accord litigators to remedies a court could award under the CAA.  For example, TNRCC could assess a penalty, could issue compliance orders, and could allow citizen participation through a written comment period and a public hearing at which the citizens could speak.

11

Texans United argue that the district court should have followed the Second and Ninth Circuits which hold that the plain language of § 505(b) of the CWA gives preclusive effect only to a "civil action," brought in a "court."  The relevant language in § 505(b) of the CWA is identical to the language in § 7604(b) of the CAA.[8]

In  Friends of the Earth v. Consolidated Rail Corp., 768 F.2d 57, 59 (2d Cir. 1985) ("Conrail"), plaintiffs brought a suit under the CWA alleging that Consolidated Rail Co. violated its discharge permits.  The Second Circuit considered whether enforcement actions by the New York State Department of Environmental Conservation against Consolidated Rail Co. precluded citizen suits under § 505(b) of the CWA.  Id. at 58.  The court disagreed with Baughman and held that, based on the plain language of CWA § 505(b), it would be inappropriate to expand "action in a court of the United States, or a State" to include administrative enforcement actions. Id. at 62.

The Ninth Circuit in adopting the holding in Conrail, noted that section 505(b) "does specifically refer to 'courts,' and ...

_____

[8] Section 505 of the CWA is a citizen suit provision specifically modeled on CAA section 304.  Under CWA section 505(b), "[n]o action may be commenced ... if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State ...."  33 U.S.C. § 1365(b)(1)(B).  An amendment added a separate provision explicitly granting preclusive effect to certain administrative penalty actions.  See Pub. L. 100-4 § 314(a), 101 Stat. 7 (Feb. 4, 1987) (codified at 3 U.S.C. § 1319(g)(6)(A)).  Since the Second and Ninth Circuit decisions discussed above predate the 1987 amendment, the analysis therein is directly applicable to the interpretation of CAA § 304.

12

makes no direct or veiled reference to any type of administrative proceeding." Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1525 (9th Cir. 1987). We agree with the Second and Ninth Circuits that the plain meaning of "court of the United States or a State" excludes administrative actions. We therefore reverse the district court's judgment dismissing this suit on the ground that Texans United are precluded, under § 7604, from pursuing this cause of action against Crown.

## IV. CONCLUSION

For the above reasons, we conclude that Texans United have standing to pursue the suit under the CAA. We REVERSE the district court's grant of summary judgment in favor of Crown on the grounds of statutory preclusion and REMAND to the district court for further proceedings.