**ST. BERNARD CITIZENS FOR ENVIRONMENTAL QUALITY, INC., and Louisiana Bucket Brigade**

v.

**CHALMETTE REFINING, L.L.C.**

No. Civ.A. 04–0398.

United States District Court,
E.D. Louisiana.

Feb. 3, 2005.

Adam Babich, Andre Shiromani, John Pint, Christopher Ralph Brown, Tulane Environmental Law Clinic, New Orleans, LA, for Plaintiffs.

Mark John Spansel, Glen Marion Pilie, Jane C. Raiford, Adams & Reese, New Orleans, LA, for Defendant.

### ORDER AND REASONS

VANCE, District Judge.

Plaintiffs St. Bernard Citizens for Environmental Quality, Inc. and Louisiana Bucket Brigade move for partial summary judgment on liability and standing. Defendant Chalmette Refining, L.L.C. opposes the standing portion of the motion. For

the following reasons, the Court GRANTS plaintiffs' motion as to both standing and liability.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are nonprofit corporations formed to address environmental issues in St. Bernard Parish and in Louisiana. On February 12, 2004, and by amended complaint on February 20, 2004, plaintiffs sued Chalmette under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), and the citizen suit provision of the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11046(b)(1). Plaintiffs allege that Chalmette has violated and continues to violate (1) hourly permit emission limits for various harmful pollutants, (2) flare performance standards and monitoring requirements, (3) benzene emission limits for its storage tanks, (4) State reporting requirements for "unauthorized discharges" of pollutants and (5) EPCRA reporting requirements. Plaintiffs allege that these violations endanger the health and damage the quality of life of their members who live near Chalmette's refinery. Plaintiffs request a declaration that Chalmette has committed these violations, an injunction requiring Chalmette to cease the violations, civil penalties and attorney's fees. 42 U.S.C. § 7604(g).

Plaintiffs now move for partial summary judgment on liability and standing. The Court heard oral argument on the motion, and it has considered the briefs of the parties. For the following reasons, the Court grants the motion.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

## III. DISCUSSION

Congress created the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1). The Clean Air Act, 42 U.S.C. §§ 7401, *et seq.,* is a comprehensive program for controlling and improving the nation's air quality. Under the Act, the Environmental Protection Agency identifies air pollutants that endanger the public health or welfare, determines what concentrations of those pollutants are safe and promulgates those determinations as national ambient air quality standards. *See* 42 U.S.C. §§ 7408, 7409. Each state bears responsibility for ensuring that its ambient air meets the appropriate NAAQS, *see* 42 U.S.C. § 7407(a), and must develop a state implementation plan to achieve the standards established by the EPA. See 42 U.S.C. § 7410(a). The Act requires state implementation plans to include "enforceable emission limitations and other control measures, means, or techniques ... as well as schedules and timetables for compliance" to meet the NAAQS. 42 U.S.C. § 7410(a)(2)(A). Louisiana's implementation plan requires permits for discharges of air pollutants. LA.REV.STAT. ANN. § 30:2055. The Secretary of the Louisiana Department of Environmental Quality issues permits in accordance with federal

and state law and LDEQ regulations. LA. REV.STAT. ANN. § 30:2504.

The Act includes a citizen suit provision that allows citizens to request injunctive relief and civil penalties, payable to the United States Treasury, for the violation of any "emission standard or limitation" under the Act. 42 U.S.C. § 7604(a). Plaintiffs sue Chalmette under this citizen suit provision for violating emissions limits set by permits issued by the LDEQ under the Act.

### A. Standing

■ Plaintiffs move for summary judgment on the issue of whether they have standing to bring this action under the Clean Air Act. The Clean Air Act's citizen suit provision authorizes "any person" to "commence a civil action on his own behalf against any person ... who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emissions standard or limitation under this chapter." 42 U.S.C. § 7604(a) (emphasis added). Plaintiffs make allegations that come within this statutory language. And, because Congress authorized "any person" to commence a civil suit and defined "person" to include "an individual, corporation, partnership, [or] association," statutory standing to sue under the Clean Air Act extends to the outer boundaries set by the "case or controversy" requirement of Article III of the Constitution. See Ecological Rights Found. v. Pacific Lumber Co., 230 F.3d 1141, 1147 (9th Cir.2000) (interpreting same language authorizing "any person" to sue under the Clean Water Act). Accordingly, if plaintiffs have standing under Article III, they also have statutory standing under the Clean Air Act.

■ Thus, the Court must determine whether plaintiffs have Article III standing to bring this citizen suit. The standing issue is a threshold matter of jurisdiction.

Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp., 207 F.3d 789, 792 (5th Cir.2000). The requirement that a party have standing flows from the Article III requirement that there be a "case or controversy." U.S. Const. Art. III, § 2, cl. 1. Standing analysis focuses on whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). To prevail on a summary judgment motion, the plaintiff may not rest on mere allegations to support standing, but instead, must produce affidavits or other evidence to prove that standing exists. See Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 115 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

■ In this suit, plaintiffs seek to represent the interests of their members. Organizations like plaintiffs have standing to bring a suit on behalf of their members if: (1) their members would have standing to sue in their own right; (2) the interests they seek to protect are germane to their purpose as an organization; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members. Texans United, 207 F.3d at 792.

Plaintiffs have produced evidence to demonstrate that there is no genuine issue of material fact as to the second and third elements of this test. For the second element, plaintiffs submit an affidavit from Kenneth Ford, the president of St. Bernard Citizens, who states that one of the purposes of his organization is to protect "the organization's members and other St. Bernard Parish residents from pollution coming from the surrounding petrochemical industry." (Pls.' Mot. Summ. J., Ex. II at ¶ 4). Ford also states that the interests that St. Bernard Citizens seeks to protect

in this lawsuit are directly related to that organizational purpose. (*Id.* at ¶ 5). Similarly, Anne Rolfes, the Director of the Louisiana Bucket Brigade, states in her affidavit that one of the purposes of the Bucket Brigade is to address "environmental health and justice issues in Louisiana." (*Id.*, Ex. KK at ¶ 4). She also states that the interests that the Bucket Brigade seeks to protect in this lawsuit are directly related to that organizational purpose. (*Id.* at ¶¶ 4, 7). Chalmette has not contradicted these assertions or briefed this issue. Accordingly, plaintiffs have established that there is no genuine issue of material fact that the interests that plaintiffs seek to protect are germane to their organizational purpose.

Plaintiffs have also satisfied the third part of the test. Plaintiffs argue that because they do not seek monetary damages or particularized relief limited to a single person or group, their lawsuit does not require the participation of individual members of the organizations. Because neither the claim plaintiffs assert, nor the relief they request, requires individualized proof, "both are . . . properly resolved in a group context." *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 344, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Again, Chalmette has not contradicted plaintiffs' assertions or briefed the issue. Accordingly, plaintiffs have established that this lawsuit does not require the participation of individual members of the organizations.

■ The only remaining question, then, is whether the plaintiffs' members would have standing to sue in their own right. To prevail on their motion for summary judgment on standing, the individual members must show that there is an absence of a genuine issue as to whether: (1) they have suffered an actual or threatened injury; (2) the injury is "fairly traceable" to the defendant's action; and (3) the injury will likely be redressed if the plaintiffs prevail in the lawsuit. *Texans United*, 207 F.3d at 792. Plaintiffs and Chalmette disagree about whether plaintiffs produced evidence sufficient to satisfy these three requirements under Fifth Circuit law.

### 1. Injury–in–Fact

Plaintiffs rely on two affidavits to demonstrate that their members have suffered an injury-in-fact.[1] The first is from Kenneth Ford, who is the president of St. Bernard Citizens. Ford lives about one-fifth of a mile from Chalmette. Ford avers that he often smells nauseous, obnoxious, chemical odors coming from Chalmette. He states that the odors prevent him from enjoying the use of his property, prevent him from spending time outside with his grandchildren, and cause him to fear for his family's health and his own health, particularly because he has lung cancer and has had one lung removed. (Pl.'s Mot. Summ. J., Ex. II at ¶¶ 9–11). He also states that there are black petroleum coke deposits on his lawn, windows, other property and inside his home that also prevent him and his family from spending time outside and cause him to fear for their health. (*Id.* at ¶¶ 13–16). The second affidavit is from Lawrence Navo, a member of the Louisiana Bucket Brigade who lives about one mile from Chalmette. (*Id.*, Ex. JJ at ¶¶ 2–3). Navo similarly avers that he often smells odors similar to rotten eggs coming from Chalmette, that visitors to his home ask him how he puts up with the odor, and that he is unsure whether he should invite people

---

1. Chalmette argues that another affidavit plaintiffs submitted, from Anne Rolfes, should be disregarded in determining whether plaintiffs have met the "injury-in-fact" requirement. Plaintiffs do not rely on Rolfes' affidavit to demonstrate the injury-in-fact requirement, and thus the Court need not consider Chalmette's contention.

to his home because of the smell. (*Id.* at ¶¶ 5, 7). The odors cause him to go indoors if he is outside, and he fears for his family's health. (*Id.* at ¶ 5). Navo also notes the constant presence of soot on his property, which requires him to keep his car covered to protect it. (*Id.* at 8). These assertions have not been contradicted by Chalmette and thus stand as undisputed facts.

Plaintiffs argue that these affidavits demonstrate that their members' enjoyment of their surroundings has been diminished and that they thus have demonstrated a cognizable injury. Chalmette argues that plaintiffs' injuries consist solely of smelling odors and, because plaintiffs do not offer evidence connecting the odors to any health effects, their injury is not sufficiently concrete and particularized to confer standing.

■ Chalmette's contention is without merit. The Supreme Court has held that environmental plaintiffs demonstrate injury-in-fact when they aver that they use the affected area and are persons " 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 183, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). In *Laidlaw*, the Court found injury-in-fact in a Clean Water Act case based on an affidavit from an individual who averred that "he lived a half-mile from Laidlaw's facility; ... he occasionally drove over the North Tyger River, and ... it looked and smelled polluted." *Id.* at 181–82, 120 S.Ct. 693. Furthermore, the Fifth Circuit has relied on authority that holds that "breathing and smelling polluted air is sufficient to demonstrate injury-in-fact and thus confer standing under the CAA." *Texans United*, 207 F.3d at 792 (citing *NRDC v. EPA*, 507 F.2d 905, 910

(9th Cir.1974)). In *Texans United*, the Fifth Circuit found that plaintiffs satisfied the injury-in-fact requirement when they stated in affidavits that they suffered repeated exposure to sulfurous odors while in their homes and yards. *Id.* Thus, plaintiffs need not show, as Chalmette appears to contend, that they suffer a bodily injury caused by the pollution. Rather, plaintiffs can demonstrate a cognizable injury by showing that they breathe and smell polluted air. *Id.*; *Communities For A Better Env't v. Cenco Refining Co.*, 180 F.Supp.2d 1062, 1074–75 (C.D.Cal.2001). Chalmette has cited no contrary authority and has not offered a persuasive challenge to plaintiffs' evidence demonstrating an injury-in-fact. The Court concludes that plaintiffs have shown that there is no genuine issue as to the "injury-in-fact" requirement for standing.

**2. "Fairly Traceable"**

Plaintiffs assert that the affidavits and deposition testimony that they submit establish that their injury is fairly traceable to Chalmette's emissions. Plaintiffs' evidence includes testimony by Ford and Navo that they are able to trace the pollution they smell to Chalmette because they smell the odors when the wind is blowing from Chalmette's direction. (Pl.'s Mot. Summ. J., Ex. II at ¶ 9; Ex. JJ at ¶ 6; Pl.'s Reply Mem. Summ. J., Ex. 1 at 35; Ex. 2 at 116). Plaintiffs also present affidavit and deposition testimony that the observations by Ford and Navo have been confirmed by Chalmette's own personnel. Ford testified, "many times I've been told by Mobil, 'It's us, we're doing it.' " (Pl.'s Reply Mem. Summ. J., Ex. 2 at 119–120).[2] When asked whether he thought the odor was from Chalmette, Ford also stated, "Especially now, if I call up or Chris Hill

---

2. Exxon Mobil owns an interest in Chalmette Refining, L.L.C., and Ford generally refers to

the owner of Chalmette as "Mobil" in his deposition.

tells me, 'We got trouble with the coke unit Mr. Ford,' or DEQ says, 'Mobil called up, they're having problems.' And this happens plenty of times." (*Id.* at 114–15). These observations are supported by the EPA's determination that the black dust that accumulates on the property of plaintiffs' members comes from Chalmette. (Pl.'s Mot. Summ. J., Ex. II, Attachment 4, Letter from EPA to Kenneth Ford of 2/04/03, at 1). Plaintiffs also provided evidence that Chalmette violated emissions limitations in its permits on at least 34 occasions between March 10, 1999 and March 4, 2004. (*See* discussion, *infra* at 21–24; Pls.' Mot. Summ. J., Exs. A–HH; Pls.' Reply Mem. Mot. Summ. J., Ex. 3).

Chalmette nevertheless argues that plaintiffs cannot satisfy the fairly traceable requirement. Chalmette appears to argue that plaintiffs must show that there is no other source that contributes to the odor that they smell before they can demonstrate that their injury is fairly traceable to Chalmette. Chalmette also makes much of the fact that plaintiffs have done some sampling of air quality but have not compared the samples to the incidents plaintiffs allege as violations in this lawsuit.

The Court rejects Chalmette's arguments. Plaintiffs can prevail on the "fairly traceable" element by showing that there is a "substantial likelihood" that the defendant's conduct caused plaintiffs' injury. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 79, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The Fifth Circuit has held that plaintiffs may satisfy this requirement by presenting only circumstantial evidence that their injuries are connected to alleged violations by Chalmette. *See Texans United*, 207 F.3d at 792–93. In *Texans United*, the following evidence was sufficient to find that the odors plaintiffs complained of were "fairly traceable" to defendant's

emissions; (1) plaintiffs' testimony that they observed smoke from the defendant's plant in their neighborhood at the same time that they smelled chemical odors; (2) evidence that odors were present during admitted process upsets; and (3) evidence that demonstrated that defendant exceeded the federal limits on pollutant emissions at its plant nearly every month. *Id.* Here, plaintiffs have provided similar evidence. Specifically, plaintiffs submitted testimony that their members smell odors when the wind is blowing from Chalmette's direction and that Chalmette frequently exceeds its emissions limits. Plaintiffs also provided evidence that indicates that odors were present on days when Ford "call[ed] up," and Chalmette either admitted to Ford that they were "having trouble with the coke unit," or DEQ told Ford that Chalmette had called to admit that they were "having problems." (Pls.' Reply Mem. Mot. Summ. J., Ex. 2 at 114–15). Chalmette has not produced any evidence to rebut plaintiffs' circumstantial evidence that their injuries are fairly traceable to pollution emanating from Chalmette. Because plaintiffs' assertions thus stand as undisputed facts, the Court finds that plaintiffs have shown an absence of a genuine issue as to whether their injuries are fairly traceable to Chalmette's actions.

Contrary to Chalmette's assertions, plaintiffs need not show that Chalmette is the only cause of their injury to satisfy the "fairly traceable" element. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir.1996) (noting, in the context of a Clean Water Act case, that a plaintiff need not show that "the defendant's effluent, and the defendant's effluent alone, caused the precise harm suffered by the plaintiffs"). Rather, it is sufficient for plaintiffs to show that Chalmette's discharge of chemicals *contributes* to the pollution that causes their injuries. *Id.; cf. Texans United*, 207 F.3d at 793

(applying, in the context of redressability issue, *Cedar Point Oil Co.'s* holding that a plaintiff need show only that defendant's emissions contribute to the pollution that causes plaintiff's injury). Thus, plaintiffs need not show, as Chalmette argues, that it is the only cause of their injuries.

Chalmette's argument that plaintiffs have not met the "fairly traceable" element because plaintiffs have not connected their air pollution samples with the violations they allege in this lawsuit is equally meritless. The Fifth Circuit has rejected a similar argument that to have standing, plaintiffs must link their injuries to the exact dates when violations of regulatory standards are known to have occurred. *Texans United,* 207 F.3d at 793. The "fairly traceable" requirement "is not equivalent to a requirement of tort causation." *Public Interest Research Group, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 72 (3d Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Plaintiffs need not show "to a scientific certainty" that the injuries they suffer are caused by Chalmette's emissions, because such tort-like causation is not required by Article III. *See id.* at 73 n. 10. To prevail on summary judgment, then, plaintiffs need establish only the absence of a genuine issue as to whether there is a "substantial likelihood" that plaintiffs' injuries are fairly traceable to Chalmette.

Plaintiffs have submitted unrebutted evidence that, when Ford inquired, Chalmette admitted that it was "doing it," *i.e.,* causing the chemical odors, and that the EPA has determined that the soot on plaintiffs' members' property comes from Chalmette. By showing that Chalmette violated its emissions permit limits and that the emissions contribute to the types of injuries asserted, namely exposure to chemical odors and petroleum coke dust and soot, plaintiffs have demonstrated an absence of a genuine issue as to the fairly

traceable prong. *See id.* at 72–73 (plaintiffs' injury is "fairly traceable" to defendant's actions when plaintiffs objected to water that had a greasy or oily sheen and defendant discharged oil and grease in excess of its permit limits); *Public Interest Research Group v. New Jersey Expressway Auth.,* 822 F.Supp. 174, 182 n. 10 (D.N.J.1992) (granting summary judgment on the "fairly traceable" prong when plaintiffs showed that defendant discharged pollutants in excess of its permit limits, and the pollutants were of a type that causes or contributes to the types of injuries asserted). In light of plaintiffs' evidence, Chalmette would have to produce evidence that creates a fact issue about 1) whether it discharged chemicals in excess of its permits, or 2) whether plaintiffs' members in fact smelled the chemical odors and observed the petroleum coke dust and soot on their property. *See Powell Duffryn,* 913 F.2d at 73 n. 10 (citing *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). Chalmette has done neither. The Court thus finds that plaintiffs have demonstrated the absence of a genuine issue as to whether there is a "substantial likelihood" that Chalmette's emissions contribute to their injuries.

### 3. Redressability

Plaintiffs assert that the injunctive and civil penalty remedies it requests under the Clean Air Act will redress their injuries because they will abate the conduct they complain of and prevent its recurrence. Plaintiffs also argue that the remedies requested are appropriate because plaintiffs provide evidence, unrebutted by Chalmette, of both numerous past violations and at least one violation since plaintiffs filed suit that demonstrate a real threat that the violations plaintiffs complain about will continue. Chalmette argues that plaintiffs cannot show that the

relief they request will redress their injuries, because plaintiffs cannot show that the violations could continue into the future and because the incidents are not connected, from the same sources in the refinery, or predictable. Chalmette also argues that injunctive relief would be excessively intrusive.

### a. Injunctive Relief

■ Plaintiffs must demonstrate that each form of relief they seek will redress their injuries. *Laidlaw*, 528 U.S. at 185, 120 S.Ct. 693. An injunctive remedy is an appropriate form of redress if it will effectively abate or deter illegal conduct that is ongoing at the time of suit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Powell Duffryn*, 913 F.2d at 73; *Texans United*, 207 F.3d at 793–94. Here, plaintiffs' summary judgment evidence indicates that Chalmette has repeatedly violated its permit emissions limits for various chemicals on at least 34 occasions between March 1999 and September 2003. (Pl.'s Mot. Summ. J., Exs. A–HH). Plaintiffs have also submitted evidence that Chalmette violated its permit after plaintiffs filed suit. (Pls.' Reply Mem. Mot. Summ. J., Ex. 3). Plaintiffs have alleged, and the documented violations indicate, that Chalmette repeatedly violates the Clean Air Act and that, unless some action is taken to prevent the illegal conduct, there is a real threat that such violations will continue to occur. *See O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.").

Chalmette has not produced evidence to rebut plaintiffs' assertions. Nor has Chal-mette shown that it has taken action to bring the refinery into full compliance with its permits. In *Texans United*, the defendant argued that an injunction would not redress plaintiffs' injuries because the defendant had already taken steps to bring the refinery into compliance. 207 F.3d at 793–94. The Court found that plaintiffs' evidence that the defendant's remedies were inadequate to achieve and maintain compliance was sufficient to show that there was a continuing threat of violations that would be redressed by an injunction. *Id.* Here, though, plaintiffs need not produce evidence that Chalmette's remedies are inadequate because Chalmette does not assert and has not demonstrated that it has achieved full compliance with the emissions limits in its permits so as to eliminate any real threat of future violations. Without some evidence that Chalmette has fully remedied the conditions that led to the violations, plaintiffs' unrebutted evidence of repeated violations, including at least one that occurred after plaintiffs filed suit, demonstrates a real threat that Chalmette will continue to violate the Clean Air Act. An injunction requiring Chalmette to cease violating its permits will redress plaintiffs' injuries by ensuring that they do not recur in the future, and it is therefore an appropriate form of redress.[3] *See Steel Co.*, 523 U.S. at 108, 118 S.Ct. 1003 (injunctive relief is "remedial" for Article III purposes and therefore appropriate "when threatened injury is one of the gravamens of the complaint"); *Texans United*, 207 F.3d at 793–94 (finding injunctive relief appropriate when plaintiffs produced evidence of excess emissions, and defendant had not demonstrated that it had achieved compliance with emissions limits).

---

**3.** The Court need not consider Chalmette's argument that injunctive relief would be impractical, because, regardless of its practicality, an injunction that prevents Chalmette from violating the Clean Air Act would redress plaintiffs' injuries.

#### b. Civil Penalties

██ Civil penalties will likewise redress plaintiffs' injuries "to the extent that they encourage defendants to discontinue current violations and deter them from committing future ones." *Laidlaw*, 528 U.S. at 186, 120 S.Ct. 693. Although citizen plaintiffs do not have standing to seek civil penalties for "wholly past violations," *id.* at 188, 120 S.Ct. 693 (citing *Steel Co.*, 523 U.S. at 106–07, 118 S.Ct. 1003), they do have standing to seek penalties for violations that are ongoing and could continue into the future if not deterred. *Id.* at 188, 120 S.Ct. 693. Here, as discussed above, plaintiffs have demonstrated that Chalmette frequently violated its permits by exceeding emissions limits and continued to violate them after plaintiffs filed suit. Chalmette has not shown that it has changed the conditions that led to the violations to achieve full compliance. The summary judgment evidence clearly indicates that Chalmette could violate emissions standards in the future. *See Texans United*, 207 F.3d at 794 (when evidence suggested that an administrative settlement could not ensure that defendant would not commit further violations in the future, civil penalties would redress plaintiff's injuries by deterring the violations). Civil penalties carry a deterrent effect, which makes it likely that the penalties will redress plaintiffs' injuries by "abating current violations and preventing future ones." *Laidlaw*, 528 U.S. at 187, 120 S.Ct. 693. Plaintiffs have standing to seek those penalties.

For the foregoing reasons, the Court finds that plaintiffs have standing to bring this lawsuit. Plaintiffs' motion for summary judgment on the issue of standing is granted.

#### B. Liability

Plaintiffs also move for summary judgment on the issue of Chalmette's liability for 34 of the permit violations that plaintiffs allege Chalmette committed. Chalmette does not oppose plaintiffs' motion for summary judgment on liability for these 34 violations.

Louisiana law prohibits any discharge of "air contaminants ... into the air of this state in violation of regulations of the secretary or the terms of any permit, license, or variance." LA.REV.STAT. ANN. § 30:2057. Louisiana's plan for implementing the Clean Air Act requires Chalmette to file a written report with LDEQ each time the refinery has an "unauthorized discharge." LA. ADMIN. CODE tit. 33:III § 927. An "unauthorized discharge" is "a continuous, intermittent, or one-time discharge, whether intentional or unintentional, anticipated or unanticipated, from any permitted or unpermitted source which is in contravention of any provision of the Louisiana Environmental Quality Act (R.S. 30:2001 et seq.) or of any permit." LA. ADMIN. CODE tit. 33:I § 3905. In the unauthorized discharge report, Chalmette must inform LDEQ whether the discharge was "preventable." LA. ADMIN. CODE tit. 33:I § 3925(B)(13). Although a state's implementation plan may provide an affirmative defense for permit violations caused by circumstances beyond the control of the owner or operator, that defense will apply only to "malfunctions," which are "sudden and unavoidable breakdown[s] of process or control equipment." EPA, Policy on Excess Emissions During Malfunctions, Startup, and Shutdown (Sept. 20, 1999), *available at* http://www.epa.gov/ttn/nsr/gen/excessem.pdf. Failures that are caused by "any other preventable upset condition or preventable equipment breakdown" cannot be considered malfunctions. LA. ADMIN.CODE tit. 33:III § 111.

██ Since March 3, 1999, Chalmette has filed at least 34 written reports, which

document unauthorized discharges. Chalmette has admitted that each of these discharges was "preventable." (Pl.'s Mot. Summ. J., Exs. A–HH). Chalmette has not asserted the "malfunction" defense for these violations and, in any event, it could not rely on the defense because it admitted in its reports that the 34 unauthorized discharges were "preventable." The unauthorized discharge reports demonstrate that Chalmette violated emissions standards or limitations promulgated under the Clean Air Act and Louisiana's implementation plan on each of the 34 occasions on which it reported unauthorized discharges. *See Unitek Envt'l Services, Inc. v. Hawaiian Cement,* No. 95–00723SPK, 1997 U.S. Dist. Lexis 19261, at *10–11 (D.Haw. Aug. 7, 1997) (defendant's permit applications acknowledging that it was not in compliance with national and state air quality standards were "credible evidence" of Clean Air Act violations); *Sierra Club v. Public Serv. Co. of Colorado,* 894 F.Supp. 1455, 1458 (D.Colo.1995) (defendant's continuous emissions data and reports that reflected emissions exceeding the applicable limit numerous times over five years were competent evidence of ongoing emissions violations); *Friends of the Earth v. Potomac Elec. Power Co.,* 419 F.Supp. 528, 533 (D.D.C.1976) (finding no issue of fact as to the existence of 24 emissions violations when those incidents were reflected in defendant's own records); *see also United States v. Aluminum Co. of America,* 824 F.Supp. 640, 648–49 (E.D.Tex. 1993) (defendant's discharge monitoring reports, which reported violations of defendant's Clean Water Act permit, were "virtually unassailable" admissions that the violations occurred). Because Chalmette documented the 34 violations on which plaintiffs move for summary judgment as "preventable" unauthorized discharges, there is no genuine issue of fact as to the existence of those violations. Chalmette is liable under the Clean Air Act for such

violations, and the Court grants summary judgment for the plaintiffs with regard to them.

## IV. CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' partial motion for summary judgment on standing to bring this action under the Clean Air Act. The Court also grants plaintiffs' motion for summary judgment as to Chalmette's liability for the 34 incidents Chalmette reported as "preventable" unauthorized discharges.