IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-31465

_____

BERYL LOCKETT, wife of/and; CARL F LOCKETT,

Plaintiffs - Appellants,

MARIA ASEVEDO, wife of/and; AARON ASEVEDO; EULA RUBERTS, wife
of/and; LEE ANNA RUBERTS, testamentary executrix of the succession
of Paul Ruberts, Jr.; MARY KING, wife of/and; LARRY E KING,

Intervenor Plaintiffs - Appellants,

versus

ENVIRONMENTAL PROTECTION AGENCY, Etc.; ET AL,

Defendants,

VILLAGE OF FOLSOM, LOUISIANA; MARSHELL BRUMFIELD, Mayor of Village
of Folsom; MERTY FITZMORRIS, Village Administrator of Folsom,

Defendants - Intervenor Defendants - Appellees.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana

_____

January 24, 2003

Before KING, Chief Judge, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This is an appeal from dismissal of a citizen suit brought

under the Clean Water Act. We conclude that the suit cannot

proceed because Louisiana is diligently prosecuting an action under a comparable state law.

I.

The appellants are landowners in and around the Village of Folsom, Louisiana. Folsom owns and operates a sewage treatment facility which discharges effluent into a ravine that abuts or traverses the private properties of the landowners. They allege that the effluent is improperly treated, and as a result violates the plant's National Pollutant Discharge Elimination permit.

On August 12, 1999, the Locketts sent a notice of violations and sixty-day notice of intent to sue letter to defendants alleging violations of the Federal Water Pollution Control Act, commonly known as the Clean Water Act (CWA).[1] None of the intervening plaintiffs sent a notice letter. On November 4, 1999, the Louisiana Department of Environmental Quality (DEQ) issued a Compliance Order to the Village of Folsom for various violations in the operation of its water treatment facility. The order resulted in a $466,450 penalty assessment issued August 20, 2001.

On December 7, 1999, the Locketts sent a second notice letter to the defendants, which iterated the claims of their first letter and referenced ongoing violations. The Locketts filed suit on March 31, 2000 under the CWA's citizen suit provision.[2] The

---

[1] 33 U.S.C. § 1251 *et seq.*(2001).

[2] *Id.* § 1365(a)(1) (2001).

remaining appellants intervened in the suit at various times.  In addition, all of the appellants but Maria and Aaron Asevedo have intervened in the DEQ adjudicatory hearing concerning the $446,450 penalty assessment.

The district court granted Folsom's motion to dismiss for lack of subject matter jurisdiction, pointing to 33 U.S.C. § 1319(g)(6), which prohibits a citizen suit when a state is diligently prosecuting an action under "comparable" state law.  The district court also held that the plaintiffs had failed to file suit within 120 days of sending their first notice, and therefore the exceptions found in § 1319(g)(6)(B)(ii) to the bar of the citizen suits did not apply.

## II.

Appellees raise for the first time the Locketts' standing to challenge the district court's holding on the comparability of the Louisiana and federal statutes.[3]  The Locketts challenge the district court's holding that the statutes are comparable based on their assertion that the Louisiana statute does not provide adequate notice and opportunity for citizen participation in enforcement actions brought by the DEQ.  Because the Locketts received notice of and were allowed to intervene in the enforcement

---

[3] Appellees assert that the remaining appellants lack subject matter jurisdiction, an issue we address below, and therefore the Locketts are the only appellants to which this argument is addressed.

action brought by the DEQ, the appellees argue that there is no Article III case or controversy.

This argument is without merit and misconstrues the Article III standing inquiry. To satisfy the standing requirement of Article III in a citizen suit under the CWA, a plaintiff must show (1) an actual or threatened injury, (2) "fairly traceable" to the defendant's action, and (3) likely redress if the plaintiff prevails in the lawsuit.[4] That there was standing to bring the current suit is not challenged. The Locketts now appeal the district court's holding that their suit was barred when the DEQ brought an enforcement action under a comparable state law. The Locketts are challenging the district court's legal determination that the statute is comparable, not asserting that they were injured by a lack of notice or opportunity to participate in the DEQ action. The fact that the Locketts received notice and have intervened in the DEQ action is irrelevant to the question of whether they have standing to sue under the citizen suit provision of the CWA and appeal an adverse ruling. Clearly, the Locketts can satisfy the Article III standing requirements of injury, cause, and redressability.

Appellees also raise a question of subject matter jurisdiction for the first time on appeal. The argument is that although the intervenor-appellants were proper intervenors in the district court

---

[4] *Texans United for a Safe Economy Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000).

4

because of their state law claims, they are not proper parties to the appeal of the federal claims because they did not file notice of the intent to sue as required by the citizen suit provision, and therefore were never proper parties to the federal claims.[5]

Of course subject matter jurisdiction may be raised at anytime.[6] However, we have stated that a notice requirement in the context of a citizen suit provision, "although mandatory, is not jurisdictional 'in the strict sense of the term,' and hence may not be availed of for the first time on appeal by an appellant seeking reversal of an adverse trial court judgment on that basis."[7] In *Yeutter*, we reasoned that the notice requirement was more procedural than jurisdictional. The statute at issue in *Yeutter* was the Endangered Species Act, which is nearly identical to the sixty-day notice requirement at issue here.[8] While in this case it is the appellee raising the issue for the first time on appeal, our reasoning in *Yeutter* applies here as well. Therefore, we do not decide whether the intervening parties are required to give notice of their intention to intervene under § 1365(b).

III.

---

[5] 33 U.S.C. § 1365(b) (2001).

[6] *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996).

[7] *Sierra Club v. Yeutter*, 926 F.2d 429, 437 (5th Cir. 1991) (quoting *Hallstrom v. Tillamook County*, 493 U.S. 20, 30 (1989)).

[8] 16 U.S.C. § 1540(g)(2)(A)(I) (2000).

5

The CWA provides in § 1365(a)(1) that citizens may sue any person who is alleged to be in violation of an effluent standard or limitation.[9] There are two restrictions. The first is that no action may be commenced "if the Administrator [of the EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order."[10] This limitation is not applicable here, as neither the EPA nor the DEQ has brought an action in either state or federal court.

The second limitation is found in § 1319(g)(6), and in relevant part states that any violation "with respect to which a State has *commenced and is diligently prosecuting an action under a State law comparable to this subsection*, ... shall not be the subject of a civil penalty action under ... section 1365 of this title."[11] This restriction is in turn subject to two exceptions, only one of which is relevant here. The limitation does not apply to actions under § 1635 with respect to any violation for which:

> notice of [the] alleged violation...has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.[12]

---

[9] § 1365(a)(1).

[10] § 1365(b)(1)(B).

[11] 33 U.S.C. § 1319(g)(6)(A)(ii) (2001) (emphasis added).

[12] § 1319(g)(6)(B)(ii).

The referenced notice requirement of § 1365(b)(1)(A) states that no action under § 1365(a)(1) may be commenced "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order."[13]

In summary, § 1319(g)(6) states that any violation for which a state has commenced and is diligently prosecuting an action under a comparable state law shall not be the subject of a suit under § 1365(a)(1) unless proper notice was given prior to the action being commenced and the citizen suit was filed within 120 days of the notice.

IV.

We begin by determining whether the DEQ "has commenced and is diligently prosecuting an action under a State law comparable to" § 1319(g).[14]  The district court found that the DEQ commenced an administrative penalty action on November 4, 1999, when it issued a Compliance Order to Folsom, and that the DEQ has diligently prosecuted the action.[15]  Appellants do not challenge that holding on appeal, and therefore the only issue before us is whether the

---

[13] § 1365(b)(1)(A).

[14] § 1319(g)(6).

[15] *Lockett v. EPA*, 176 F. Supp. 2d 628, 631–32 (E.D. La. 2001).

7

action was brought under a "comparable" state law.[16]  We review *de novo* a district court's grant of summary judgment on the issue of statutory preclusion.[17]

A.

We have never addressed this issue, but find ample guidance from the Supreme Court and our sister circuits.  At the outset, it is important to recall that Congress expressly stated that "[i]t is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution."[18]  Thus, the "primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act."[19]  As the Supreme Court stated, "[t]he bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action."[20]

---

[16] To the extent that appellants attempt to raise the issue that the DEQ is not diligently prosecuting the action in their reply brief, we view the issue waived.  *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 179 (5th Cir. 2000) (stating, "[w]e do *not* consider any of [the issues], because they were *not* raised in the parties' opening briefs" (emphasis in original)).

[17] *Texans United for a Safe Economy Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 794 (5th Cir. 2000).

[18] 33 U.S.C. § 1251.

[19] *N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 555 (1st Cir. 1992).

[20] *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987).

8

In light of the primary role the state plays in enforcement, the requirement that a state law be "comparable" to the federal statute should be read broadly to permit the states flexibility in deciding how to enforce anti-pollution laws. In examining this issue, the Eighth Circuit stated:

> The common thread running through these cases [finding state laws comparable] is a finding that the overall regulatory scheme affords significant citizen participation, even if the state law does not contain precisely the same public notice and comment provisions as those found in the federal CWA.... [T]he comparability requirement may be satisfied so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process, and adequately safeguards their legitimate substantive interests.[21]

Appellants have asserted that the Louisiana statute is not comparable to the federal statute because it lacks adequate notice and comment provisions. We must therefore determine if the Louisiana statute "affords significant citizen participation" and "provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process."[22]

B.

---

[21] *Arkansas Wildlife Federation v. ICI Americas, Inc.*, 29 F.3d 376, 381 (8th Cir. 1994) (citing *Scituate*, 949 F.2d at 556 & n.7)

[22] *Id.; see also, Jones v. City of Lakeland, Tennessee*, 224 F.3d 518, 524 (6th Cir. 2000) (holding that the court must decide "if the overall State regulatory scheme affords interested and/or adversely affected citizens the safeguard of a meaningful opportunity to participate in the administrative enforcement process").

9

Section 1319(g)(4)(A), (B), and (C) of the CWA provides for the rights of "interested persons" to notice of and comment on proposed civil penalties.[23]  Under this subsection, before issuing an order assessing a civil penalty, the EPA "shall provide public notice of and reasonable opportunity to comment on" the proposed order.[24]  Any person who commented "shall be given notice" of any hearing on the proposed assessment and a "reasonable opportunity to be heard and to present evidence."[25]  If the assessed party does not elect for a hearing, any person who commented on the proposed assessment may petition for a hearing.[26]  If the evidence presented in support of the petition is "material and was not considered in the issuance of the order," the order shall be set aside and a hearing provided.[27]  If the petition for a hearing is refused, the EPA "shall provide to the petitioner, and publish in the Federal Register, notice of and the reasons for such denial."[28]

This procedure ensures that the public has notice of any proposed assessment, and that any "interested person" has an opportunity to comment, an opportunity to participate in any hearing, and the right to a hearing if the assessed party opts not

---

[23] 33 U.S.C. § 1319(g)(4).

[24] § 1319(g)(4)(A).

[25] § 1319(g)(4)(B).

[26] § 1319(g)(4)(C).

[27] *Id.*

[28] *Id.*

10

to have one when they have material evidence not considered by the EPA.

The Louisiana statute provides comparable opportunity for interested citizens to participate in the agency action, although the approach differs from the approach of the CWA. Under the Louisiana Revised Statute 30:50.1 *et seq.*, the DEQ does not notify the public of any compliance order or penalty assessment before it is issued.[29] However, the secretary of the DEQ is required to maintain a list "of all notices of violations, compliance orders, and penalty assessments issued in the preceding three months" which shall be updated monthly.[30] On a "periodic basis" a copy of this list shall be mailed separately or as part of a department publication, to persons who request to be on the mailing list.[31] Thus, there is public notification of agency enforcement actions, and an opportunity to participate before the action becomes final, as we will explain.

Once the DEQ issues an order, one of three things happens: (1) the respondent exercises his right to a hearing; (2) the respondent and the DEQ enter into a settlement or compromise; or, (3) the respondent agrees to comply without a hearing.

---

[29] La. Rev. Stat. Ann. 30 § 2050.2 (West 2002) (notice is provided to the respondent, including the respondent's right to an adjudicatory hearing).

[30] § 2050.1.B.(1).

[31] § 2050.1.B.(2)(a).

In the first situation, when the respondent elects to have an adjudicatory hearing, Louisiana Revised Statute 30 § 2025.E(5) and 2050.4.I require that the public be given an opportunity to submit comments. Any "aggrieved party" has the "right to intervene as a party" in the hearing when the intervention is "unlikely to unduly broaden the issues or unduly impede the resolution of the matter."[32]

In the second situation, when a settlement or compromise is proposed, the DEQ is required to take public comment before signing.[33] In addition, notice must be given to "a person who has requested notice" and the respondent is required to publish notice of the proposed settlement in the official journal of the parish.[34] The DEQ may hold a public hearing if either twenty-five people have filed a written request for a public hearing, or there is "a significant degree of public interest."[35] The public may present evidence, oral statements, opinions, or the like at any public hearing.[36]

In the final situation, when the respondent elects to comply without an adjudicatory hearing, an "aggrieved person" may request

---

[32] La. Rev. Stat. 30 § 2050.11.B. An aggrieved party is defined as "a person who has a real and actual interest that is or might be adversely affected by a final action of the department under the Louisiana Environmental Quality Act, R.S. 30:2001 et seq." La. Admin. Code tit. 33, pt. I, § 303 (2001).

[33] § 2050.7.B.

[34] § 2050.7.C.

[35] § 2050.7.D.

[36] § 2050.12.C.

one.[37]  The secretary of DEQ "may grant the request when equity and justice require it."[38]  Any request must be filed within thirty days of notice to the respondent of the order.[39]  The secretary may grant an untimely petition for an adjudicatory hearing when the untimeliness is the result of "excusable neglect."[40]  If an adjudicatory hearing is granted, public comments may be filed,[41] and an aggrieved party may intervene.[42]

In summary, under Louisiana law there is "periodic" notice to persons who request to be on the mailing list of all violations, compliance orders and penalty assessments issued in the preceding three months, and public notice is required in the case of a proposed settlement or compromise.  An aggrieved party may intervene in an adjudicatory hearing, or petition for an adjudicatory hearing if none is held.  The public may comment on the matter prior to the adjudicatory hearing, but may not participate in the hearing.  If a public hearing is held, the public may participate fully.

D.

---

[37] § 2050.4.B.

[38] *Id.*

[39] § 2050.4.E.

[40] § 2050.4.F.

[41] § 2050.4.I.

[42] § 2050.11.B (stating that the right to intervene is subject to the restriction that the "intervention is unlikely to unduly broaden the issues or unduly impede the resolution of the matter").

13

While the notice and comment provisions of the Louisiana statute are not identical to the federal statute, the statute "affords significant citizen participation" and "provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process" and is thus comparable to the federal statute.

Appellants argue that the DEQ is given too much discretion by the Louisiana statute, particularly in determining whether to allow intervention of aggrieved persons in adjudicatory hearings and in determining whether to grant an aggrieved person's request for an adjudicatory hearing when none is scheduled. Appellants argue that this makes the Louisiana statute similar to the one in *Jones*, which the Sixth Circuit determined was not comparable to the federal statute because the Tennessee statute "permits [the state] to declare citizen or public participation 'duplicitous or frivolous,' so that the plaintiffs and other similarly situated citizens can be frozen out of commencing an original action, or intervening in an ongoing State enforcement action."[43]  We do not agree.

While the DEQ is given discretion in allowing intervention or granting a petition for a hearing, the discretion is reasonably constructed to prevent abuse of the process and is subject to

[43] *See Jones v. City of Lakeland, Tenn.*, 224 F.3d 518, 524 (6th Cir. 2000).

14

judicial review.[44]  This discretion is similar to the provision in § 1319(g)(4) of the CWA, which requires the EPA to grant a petition for a hearing only if the evidence to be presented is "material and was not considered in the issuance of the order."[45]  As such, this discretion does not deny citizens an opportunity to participate in the process, and as mentioned above, adequate notice is provided as well.

We therefore conclude that the DEQ was diligently prosecuting an action under a comparable state law.  As a result, appellants' citizen suit brought pursuant to § 1365 is barred under § 1319(g)(6)(A) unless it falls under one of the exceptions found in § 1319(g)(6)(B).

V.

The limitation on citizen suits found in § 1319(g)(6)(A) is subject to two exceptions.  The first applies to civil suits filed prior to the commencement of the action by the State or the EPA.[46]  This exception does not apply here, as the instant suit was filed on March 31, 2000, several months after the DEQ initiated its action by sending a Compliance Order to Folsom on November 4, 1999.

---

[44] The Louisiana statute allows intervention in any scheduled adjudicatory hearing if intervention is "unlikely to unduly broaden the issues or unduly impede the resolution of the matter."  *See* § 2050.11.B.  Likewise, if no hearing is scheduled, an aggrieved person may petition for one, and the Secretary may grant one "when equity and justice require it."  *See* § 2050.4.B.  A decision to prohibit intervention or deny a petition for a hearing is appealable to the courts.  *See* §§ 2050.21.A and 2050.4.G.

[45] 33 U.S.C. § 1319(g)(4)(C).

[46] § 1319(g)(6)(B)(i).

15

The second exception requires that notice of intent to sue be given prior to the commencement of the state's action, and that the citizen suit be filed within 120 days of such notice.[47] We find that the appellants' suit does not satisfy this exception.

## A.

The Locketts sent their first notice of their intent to sue on August 12, 1999. This letter was mailed to the required parties, and in an attached Appendix A adequately listed the alleged violations. Pursuant to 40 C.F.R. § 135.2, a copy of the notice must be mailed to "the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred." While the Locketts mailed a copy of the first notice to the Louisiana Department of Environmental Quality, the letter was not addressed to J. Dale Givens, the Secretary of the DEQ. The Locketts mailed a second notice of intent to sue on December 7, 1999, and a copy of the notice was again sent to the DEQ, although this time the Secretary's name was included. In the intervening months, the DEQ sent a Compliance Order to Folsom on November 4, 1999. The Locketts filed their suit on March 31, 2000, within 120 days of their second notice, but not within 120 days of their first notice.

The district court held that the minor defect in the Locketts' first notice, failing to include the Secretary's name in the letter

---

[47] § 1319(g)(6)(B)(ii).

sent to the DEQ, did not make the first notice ineffective. Therefore the Locketts' suit was not filed within 120 days of their notice, and as such was not saved from preemption by the exception in § 1319(g)(6)(B)(ii).  On appeal, appellants make two arguments challenging the district court's holding.

First, appellants argue that the second notice was necessary because the first notice was not sufficient, and therefore the suit was filed within 120 days of their notice as required.  The second argument is that regardless of whether the first notice was sufficient, the second notice contains allegations of ongoing violations by Folsom that were not in the first notice or the Compliance Order, and therefore the second notice is actually the first notice of these additional violations.  As such, the suit was timely filed with respect to these violations.  We find neither argument persuasive.

B.

Appellants' first argument, that their initial notice was deficient and therefore the second notice was required, is irrelevant to deciding the issue.  Regardless of whether the first notice was sufficient, the suit is barred with respect to the alleged violations contained in that notice.

Assuming that the first notice was not sufficient, appellants must rely on their second notice to satisfy the notice requirement. However, the second notice was filed on December 7, 1999, *after* the DEQ commenced its action on November 4, 1999.  The exception in §

17

1319(g)(6)(B)(ii) requires that notice be given "prior to commencement of an action under this subsection" by the state. Therefore, any alleged violations which were being diligently pursued in the action commenced by the DEQ on November 4 were barred. On the other hand, if the first notice was sufficient, then the citizen suit was not filed within 120 days of when the notice was given, since the first notice was sent on August 12, 1999, and the suit was not filed until March 31, 2000.

Appellants argue that nothing prohibits the filing of multiple notices, and that since their suit was filed within 120 days of their second notice, their suit is not barred. Although this argument seems contrary to the purpose of the 120 day limitation, we need not decide the issue here. Even allowing for repeated notices, the only way appellants can benefit from the second notice is if we allow them to combine the two notices: using the date of the first to find that notice was given prior to the DEQ commencing the action, and the date of the second to find that the citizen suit was filed within 120 days of the notice. The clear language of the statute prohibits such an interpretation.

The statute states that notice of an alleged violation must be given "prior to commencement of an action" by the state, and that a citizen suit must be filed "before the 120th day after the date on which *such notice* is given."[48] Although filing subsequent

---

[48] *Id.*

18

notices is not prohibited, the citizen suit must be filed within 120 days of *such notice*. In the present case, the only *such notice* is the second notice which was not filed prior to the commencement of the action by the state. Therefore, even if subsequent notices are permitted, an issue we decline to decide, appellants' suit is barred because the second notice was filed after the DEQ commenced its action.

## C.

Appellants' second argument fairs no better. Perhaps recognizing that their first argument would fail, appellants emphasized that their second notice includes ongoing violations that are not in either their first notice or in the Compliance Order sent by the DEQ on November 4, 1999. The appellants argue that the notice of "new" violations was filed prior to the commencement of any action by the state, and that their suit was timely filed within 120 days of that notice. Thus, their suit would fall under the exception of § 1319(g)(6)(B)(ii).

Appellees argue that the Compliance Order issued by the DEQ on November 4, 1999, encompasses future as well as past violations because it addresses "continued violation[s] or noncompliance." As such, the second notice does not address any "new" violations.

We find the appellees' argument persuasive in light of the purposes of the citizen suit provision and the statutory limitations on citizen suits. In *Gwaltney*, the Court made it clear that the citizen suit is meant to supplement, not supplant

19

government action.[49]  To allow appellants' suit to proceed based on continued violations for which the DEQ had already begun to take action would eviscerate the bar on citizen suits where the state is diligently prosecuting an action under comparable state law.

A state compliance order can only identify those violations which have already occurred.  As a result, the Compliance Order sent by the DEQ did not list violations which occurred after it was sent.  If we were to adopt appellants' position, a citizen could file notice the day after the compliance order was sent, give notice of any additional violations, and then sue within 120 days.  Under appellants' view of what it means to "commence a state action," they would not be barred since the compliance letter did not mention specific violations which had yet to occur.  This interpretation cannot stand under the weight of even a minimal amount of scrutiny, given the purpose of the CWA's citizen suit provision.

In addition, it is apparent that the Compliance Order sent by the DEQ on November 4, 1999, commenced an action which addressed both past and future violations.  The Compliance Order states that:

> ... Respondent shall take all steps necessary to meet *and maintain compliance* with LPDES permit LA0064378...
> In the event the Respondent believes that complete correction of the above cited deficiencies is not physically possible within thirty (30) days, the Respondent shall submit ... a comprehensive plan for the

---

[49] *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).

20

expeditious *elimination and prevention* of such noncomplying discharges. Such plan shall provide for *specific corrective actions taken* and shall include *a critical path schedule for the achievement of compliance within the shortest time possible.*

...Respondent's failure or refusal to comply...could result in the assessment of a civil penalty in an amount of not more than fifty thousand dollars ($50,000) *for each day of continued violation or noncompliance.*[50]

The language of the Compliance Order clearly contemplates ongoing enforcement to assure that past violations are not repeated in the future.

We conclude that even if appellants' second notice included ongoing violations that were not noticed in their first letter, the state had commenced an action with regard to those violations prior to the second notice being sent. Therefore, appellants' suit with regard to any "new" violations is not covered by the exception in § 1319(g)(6)(B)(ii), and appellants' entire suit under § 1365 is barred because the DEQ was diligently prosecuting an action under comparable state law.[51]

## VI.

In conclusion, we find that the Louisiana statute contains comparable notice and comment provisions to § 1319(g) of the CWA. Because the DEQ was diligently prosecuting an action under a

---

[50] Emphasis added.

[51] In their reply brief, appellants raise two additional arguments. First, appellants argue that the district court's ruling on Folsom's belated motion to dismiss was improper and improvident. Second, they argue that only their request for civil penalties is preempted and that the district court should not have dismissed their claims for injunctive, declaratory, and other relief. As these issues were raised for the first time in the reply brief, they are waived. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 179 (5th Cir. 2000).

21

comparable state law, appellants' § 1365 suit was preempted.  As appellants' failed to file their suit within 120 days of their first notice, and their second notice came after the DEQ had commenced its action, their suit does not fall under the exception to preemption found in § 1319(g)(6)(B)(ii).  We therefore AFFIRM the district court's dismissal of appellants' federal claims.