# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 18, 2021

Lyle W. Cayce
Clerk

No. 20-30192

Renee Stringer,

*Plaintiff—Appellant*,

*versus*

Town of Jonesboro; James Bradford, *individually and in his official capacity as Mayor of the Town of Jonesboro*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:19-CV-343

Before Elrod, Duncan, and Wilson, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

For nearly a decade, the Town of Jonesboro's wastewater system has spewed sewage onto Renee Stringer's property and into her home. Stringer repeatedly complained about this offensive problem to the Town and its Mayor, to no avail. Litigation ensued. Stringer brought a "citizen suit" under the Clean Water Act ("CWA"), *see* 33 U.S.C. § 1365, as well as constitutional claims under 42 U.S.C. § 1983 for the uncompensated taking of her property and the Mayor's retaliation against her. The district court dismissed all her claims. It held her citizen suit barred because the CWA

prohibits such suits when a state is addressing the problem through "comparable" state law. *See* 33 U.S.C. § 1319(g)(6)(A)(ii). It held her § 1983 claims untimely under Louisiana's one-year prescriptive period.

The district court was right about Stringer's § 1983 claims. She was long aware of the underlying facts and failed to sue within a year. We therefore affirm the judgment dismissing those claims. But the district court was mistaken about Stringer's CWA citizen suit. The enforcement action to which the court pointed—the state health department's enforcement of the sanitary code—is not "comparable" to the CWA under our precedent. We therefore reverse the judgment dismissing Stringer's CWA suit and remand for further proceedings consistent with this opinion.

**I**

Stringer alleges[1] that, since at least 2011, the Town's wastewater treatment system has malfunctioned during periods of heavy rain. The culprit is the chronic failure of a pump at the "Cemetery Lift Station." Stringer's complaint identifies numerous discharges from the overwhelmed pump, beginning in 2013 and continuing into 2019. These effluvia, she claims, taint local creeks and rivers that are "waters of the United States" under the CWA. *See Rapanos v. United States*, 547 U.S. 715, 732 (2006) (plurality opinion). They also invade Stringer's property, fouling her home's plumbing and frustrating daily chores like washing dishes or bathing. The noxious overflow has also strewn her yard with condoms, toilet paper, raw sewage, and feminine hygiene products and forced her to endure "horrendous odors."

Starting as far back as November 2011, Stringer repeatedly sought help from the Town and its Mayor, James Bradford, all in vain. She claims

---

[1] The operative complaint is Stringer's first amended complaint, whose well-pled factual allegations we accept as true at the motion-to-dismiss stage. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

this was not bureaucratic sclerosis but political payback: Bradford had it in for Stringer because, while a Town alderwoman, she ran against him for Mayor in 2014. Stringer accuses Bradford of retaliating against her in various ways—such as by ignoring her pleas, getting the Town to sue her frivolously, and refusing to deliver sandbags to her house.

Louisiana regulators—including the Louisiana Department of Health (LDOH) and the Louisiana Department of Environmental Quality (LDEQ)—have long known about the problems flowing from the Cemetery Lift Station. On several occasions, LDEQ sent the Town warning letters and issued compliance orders about unauthorized discharges, including those afflicting Stringer. LDOH has also acted. Enforcing the state Sanitary Code, LDOH issued the Town a compliance order about the discharges on Stringer's property, imposed mandatory ameliorative measures, and assessed a daily fine. *See generally* La. Stat. Ann. § 40:6 (providing penalties for Sanitary Code violations). When these spurs failed, LDOH went to state court and obtained an enforcement order against the Town.

On December 17, 2018, Stringer gave the mandatory notice of intent to file a citizen suit under the CWA. *See* 33 U.S.C § 1365(b). After the required waiting period, she sued the Town and Bradford (collectively, "Defendants") in federal district court on March 18, 2019, originally asserting only a CWA claim. In July 2019, the district court issued a notice of intent to dismiss under its local rules, because the Defendants had not responded and Stringer had not sought entry of default. *See* W.D. La. Local Rule 41.3. Stringer asked for more time to take a default. To show good cause for her request, Stringer attached various documents, some concerning LDEQ's enforcement efforts. The district court granted her motion. Stringer then filed an amended complaint adding two § 1983 claims (a takings claim and a First Amendment retaliation claim) along with new allegations supporting her CWA claim.

The Defendants moved to dismiss the CWA claim, arguing LDOH's ongoing enforcement efforts triggered the "diligent prosecution bar" against citizen suits. *See* 33 U.S.C. § 1319(g)(6)(A)(ii). They moved to dismiss the § 1983 claims as untimely.

Adopting the magistrate's report and recommendation, the district court dismissed all of Stringer's claims. The court agreed that LDOH's enforcement of the Sanitary Code triggered the CWA's diligent prosecution bar in § 1319(g). It also found both of Stringer's § 1983 claims untimely under Louisiana's one-year limitations period. Stringer moved for reconsideration, which the district court construed as a Rule 59(e) motion to alter or amend the judgment. In denying that motion, the district court pointed out for the first time that "LDEQ is also prosecuting [the Town] for the alleged [discharges], as evidenced by Stringer's filings."

Stringer timely appealed.

## II

A district court's Rule 12(b)(6) dismissal for failure to state a claim is reviewed *de novo*. *ANR Pipeline Co. v. La. Tax Comm'n*, 646 F.3d 940, 946 (5th Cir. 2011). Dismissal is proper when, accepting all well-pled facts as true, the plaintiff has not stated a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An otherwise plausible claim may also be doomed by a procedural impediment, like a statute of limitations or similar bar. *See, e.g.*, *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003).

## III

The CWA creates a regime of water pollution regulation that harnesses state and federal power. *See* 33 U.S.C. § 1251(a), (b); *see also Rapanos*, 547 U.S. at 722-23; *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1004 (5th Cir. 2019). The law protects the "integrity of the Nation's waters" through a permitting process that forbids the "discharge of pollutants" into the "waters of the United States" without prior state or federal regulatory

approval. *See* 33 U.S.C. §§ 1251(a); 1311(a); 1362(7). Illicit discharges invite various sanctions, including injunctive relief, civil fines, and criminal penalties. *Id.* § 1319. Enforcement is primarily the work of government regulators. *Id.* § 1319(a)–(g). But Congress also "empowered private citizens to bring suit in federal court against alleged violators of the [CWA]." *Env't. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008); *see generally* 33 U.S.C. § 1365(a) (providing "any citizen may commence a civil action on his own behalf" under specified circumstances). These "citizen suits" are "meant to supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987); *see also Piney Run Pres. Ass'n v. Cnty. Comm'rs Of Carroll Cnty., MD*, 523 F.3d 453, 456 (4th Cir. 2008) (citizen suits "provide a second level of enforcement" that "ensure[s] th[at] state and federal governments are diligent in prosecuting [CWA] violations.").

Two key CWA provisions confirm the supplemental role of citizen suits. First, § 1365, which authorizes citizen suits, provides that "[n]o [such] action may be commenced" if a state or federal regulator "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the [CWA] standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). That limitation is not implicated here because no state or federal regulator has sued to enforce the CWA against the Town (the LDOH has sued to enforce only the state Sanitary Code). Second, § 1319 provides that no CWA violation shall "be the subject of a civil penalty action under . . . section 1365" when "a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection." *Id.* § 1319(g)(6)(A)(ii); *see generally Lockett v. EPA*, 319 F.3d 678, 683 (5th Cir. 2003) (discussing § 1319(g) bar).

It is the § 1319(g) bar that we must address. The district court ruled the bar was triggered, thus halting Stringer's suit, because the LDOH's ongoing enforcement of the Sanitary Code was action "comparable" to the

CWA's enforcement measures. Stringer contests that ruling on appeal, arguing that under our precedent the Sanitary Code is not comparable to the CWA. We agree.

Our court set out the parameters of this inquiry in *Lockett*. Drawing on precedent from our sister circuits, we explained that a state statute is "comparable" to the CWA under § 1319(g)(6)(A)(ii) "'so long as the state law contains comparable penalty provisions which the state is authorized to enforce, has the same overall enforcement goals as the federal CWA, provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process, and adequately safeguards their legitimate substantive interests.'" *Lockett*, 319 F.3d at 684 (quoting *Arkansas Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376, 381 (8th Cir. 1994)); *see also Jones v. City of Lakeland*, 224 F.3d 518, 524 (6th Cir. 2000) (considering whether state law gives citizens "the safeguard of a meaningful opportunity to participate in the administrative enforcement process"); *N. & S. Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 556 & n.7 (1st Cir. 1991) (considering similar factors under § 1319).[2] Based on our *Lockett* analysis, we disagree with the district court that the Sanitary Code is comparable to the CWA for purposes of the § 1319 bar.

---

[2] Other circuits require even greater congruence with the CWA for the state statute to be deemed comparable. *See McAbee v. City of Fort Payne*, 318 F.3d 1248, 1254–55 (11th Cir. 2003) (finding "strong textual evidence that Congress intended courts to consider . . . three classes of provisions"—public participation, judicial review, and penalty assessment—"when deciding whether state law is 'comparable'" and adopting a requirement of "rough comparability between each class of provisions"); *Paper, Allied-Indus., Chem. and Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1294 (10th Cir. 2005) (noting the Eleventh Circuit's "'rough comparability' approach [outlined in *McAbee*] stands in contrast to the more forgiving 'overall comparability' standard used by the First [in *Town of Scituate*] and Eighth [in *Arkansas Wildlife*]" circuits and adopting Eleventh Circuit's approach). We are, of course, bound to apply the standard embraced by our court in *Lockett*.

We begin (and end) with *Lockett*'s requirement that, to be comparable, a state law must "provide[] interested citizens a meaningful opportunity to participate at significant stages of the decision-making process." *Lockett*, 319 F.3d at 684 (cleaned up).[3] The Sanitary Code fails this requirement. It provides no formal or structured means for interested citizens to become aware of LDOH's enforcement efforts, nor any mechanism by which they can call for further action, involve themselves in related or ongoing proceedings, or otherwise weigh in on those efforts. *See generally* LA. STAT. ANN. §§ 40:5; 40:5.9; 40:8 (outlining LDOH's jurisdiction, investigatory powers, and remedial enforcement framework). Contrast what *Lockett* said about the Louisiana Environmental Quality Act (LEQA). We held LEQA was comparable to the CWA because that state law has a mechanism for interested parties to obtain "periodic notice" of "all violations, compliance orders and penalty assessments," because it mandates public comment before a proposed settlement is finalized, and because it permits third parties to "intervene in an adjudicatory hearing, or petition for an adjudicatory hearing if none is held." *Lockett*, 319 F.3d at 686. Lacking such features, the Sanitary Code is not similarly comparable to the CWA for purposes of the § 1319 bar. That is, the Sanitary Code neither "affords significant citizen participation" nor "provides interested citizens a meaningful opportunity to

---

[3] Other circuits have a similar requirement. *See City of Lakeland*, 224 F.3d at 523–24 (holding Tennessee statute not comparable because it "require[d] no public notice of hearings" and did not require State to "extend [to] third parties an opportunity" to participate in "enforcement proceedings"); *Town of Scituate*, 949 F.2d at 556 n.7 (holding that while comparability does not require "rights of notice and comment, public participation and rights of appeal identical to the [CWA]," a statute is comparable if it "adequately safeguard the substantive interests of citizens in enforcement actions" and provides some "rights of notice and public participation"); *McAbee*, 318 F.3d at 1256 (finding an Alabama statute not comparable absent "public-participation . . . provisions" analogous to those in the CWA); *Citizens for a Better Env't-California v. Union Oil Co. of California*, 83 F.3d 1111, 1118 (9th Cir. 1996) (noting the CWA "mandates various public notice and comment procedures" and finding state statute not comparable in part because "there is no guarantee [under the statute at issue] that the public will be given the requisite opportunity to participate").

participate at significant stages of the decision-making process," the considerations that guided our assessment of LEQA in *Lockett*. *Id.* at 684. Therefore, contrary to the district court's ruling, LDOH's enforcement actions do not bar Stringer's citizen suit under § 1319(g)(6)(A)(ii).

In their appellate brief, the Defendants offer only a token argument defending the district court's rationale (in fact, they conceded during oral argument that "the Sanitary Code is not technically a comparable statutory scheme" because it lacks notice and public participation provisions). Instead, they shift focus to the LDEQ, arguing this distinct agency's enforcement of LEQA against the Town triggered the § 1319 bar. Because we previously held that LEQA is comparable to the CWA, *see Lockett*, 319 F.3d at 687, the Defendants urge us to affirm the district court by deciding that LDEQ's efforts have been "diligent" under § 1319(g)(6)(A)(ii).

Not so fast. LDEQ was not the focus of the Defendants' diligent prosecution argument in the district court. To the contrary, the Defendants sought dismissal by focusing on LDOH and the Sanitary Code. The notion that LDEQ's efforts were sufficient to trigger the diligent prosecution bar surfaced only in response to Stringer's Rule 59(e) motion, where the Defendants noted in passing that "LDEQ is also prosecuting Jonesboro for the alleged violations, as evidenced by Plaintiff's filings, and was doing so before and after Plaintiff's notice and suit." The district court repeated this remark in denying Stringer's Rule 59(e) motion, without any analysis.

We have often said that a Rule 59(e) motion is not the place to flesh out new theories. *See, e.g.*, *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment") (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Here, the Defendants could have raised LDEQ's enforcement efforts when they moved to dismiss, but they did not. We therefore see no reason to consider an alternate basis for affirmance that was

first raised in the Defendants' response to a Rule 59(e) motion (and there only in passing), and that was not substantively analyzed by the district court. *See United States v. Hankton*, 875 F.3d 786, 793 (5th Cir. 2017) (the decision to "affirm on an alternative basis . . . is discretionary").

But even were we inclined to consider the issue, the incomplete record before us raises a red flag. Whether LDEQ has "diligently" pursued a comparable action under § 1319(g) may be "a fact-intensive question that can only be answered after the proper development of a record." *La. Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 750 (5th Cir. 2012). While the Defendants point to certain LDEQ documents in the record (and others which it urges us to judicially notice), deciding this issue on the scattershot record before us would be skating on thin ice—particularly since the district court did not analyze it. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020) ("As we have repeatedly observed, we are a court of review, not first view.") (cleaned up); *see also La. Env't Action Network*, 677 F.3d at 750 (deeming it "wise for the district court to determine in the first instance" applicability of the similar § 1365(b)(1)(B) "diligent prosecution" bar).[4] And, adding to our wariness, evidence of LDEQ's efforts

---

[4] A well-developed record is particularly important because our circuit has not yet decided how to measure "diligence" for purposes of § 1319(g) or the similar § 1365(b). *See Louisiana Env't Action Network v. Sun Drilling Prod. Corp.*, 716 F. Supp. 2d 476, 479–480 (E.D. La. 2010) (recognizing that while "various Circuit Courts of Appeal have adopted different standards for determining when [a diligent prosecution] is said to have commenced . . . [t]he Fifth Circuit has not directly addressed th[e] issue"). Courts have developed various approaches. *See, e.g., Karr v. Hefner*, 475 F.3d 1192, 1197 (10th Cir. 2007); *Arkansas Wildlife*, 29 F.3d at 380; *Town of Scituate*, 949 F.2d at 557-58; *see also Cmty. of Cambridge Env't Health & Cmty. Dev. Grp. v. City of Cambridge,* 115 F. Supp. 2d 550, 554 (D. Md. 2000); *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.*, 777 F. Supp. 173, 185 (D. Conn. 1991) *reversed in part on other grounds* 989 F.2d 1305, 1311 (2d Cir. 1993); *Conn. Fund For Env't v. Contract Plating Co.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986). We express no opinion about the proper standard. Nor do we express any opinion on whether the Defendants should be allowed on remand to raise LDEQ's enforcement efforts as a § 1319(g) bar to Stringer's suit, something we leave to the district court's discretion.

was put in the record for a purpose entirely unrelated to the § 1319 bar.[5] Accordingly, we decline to reach this issue.

In sum, the district court erred by concluding LDOH's enforcement of the state Sanitary Code triggered the CWA's bar on citizen suits in 33 U.S.C. § 1319(g)(6)(A)(ii).

## IV

We next consider whether the district court correctly dismissed Stringer's § 1983 claims as untimely. Stringer brought two distinct § 1983 claims—one alleging an unconstitutional taking of her property by the discharges,[6] the other alleging First Amendment retaliation by Bradford.

"Courts considering claims under § 1983 must borrow the relevant state's statute of limitations for personal injury actions." *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) (citing *Wilson v. Garcia*, 471 U.S. 261, 271 (1985)); *see also Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (same) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). Louisiana's relevant limitations period is one year. *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) ("The statute of limitations for Section 1983 claims is the forum state's personal-injury limitations period, which in Louisiana is one year.") (cleaned up); *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989) (recognizing "[Civil Code] article 3492 is Louisiana's only statute of limitations for personal injury actions"). Federal law, however, governs when a § 1983 claim accrues. *Redburn*, 898 F.3d at 496 (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)). "The limitations period begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.*

---

[5] As discussed, Stringer filed some of the documents to which the Defendants direct our attention as attachments to her motion to extend time for taking a default.

[6] The district court did not decide whether Stringer plausibly alleged a taking and we take no position on the question.

(cleaned up). Moreover, "[a] plaintiff need not realize that a legal cause of action exists; [she] need only know the facts that would support a claim." *Piotrowski*, 51 F.3d at 516 (citation omitted).

## A

We first consider Stringer's takings claim. Stringer's complaint confirms she was aware of the pertinent underlying facts as early as November 2011. She repeatedly alleges that beginning in "November 2011" she experienced "continuous sewage discharges" on her property attributable to the Town. Consequently, the district court concluded the one-year limitations period started at that point, expiring long before Stringer filed suit nearly eight years later in March 2019.

On appeal, Stringer attacks this conclusion on two fronts. First, citing a recent Louisiana Supreme Court decision involving "appropriation" of property by intermittent flooding, she argues the relevant limitation period is not one but three years. *See Crooks v. La. Dep't of Nat. Res.*, 2019-0160, 2020 WL 499233, at *6–8 (La. 1/29/2020), ___ So. 3d ___ (concluding inverse condemnation claim from flooding is not a tort but an appropriation subject to three-year prescriptive period in LA. STAT. ANN. § 13:5111(A)), *opinion corrected on reh'g* (April 9, 2020). Even assuming Stringer is right, the longer period would not help her: three years would have elapsed by November 2014, still nearly five years before she sued. In any event, though, Stringer is mistaken. As we recently confirmed in a similar case, a federal takings claim under § 1983 "must borrow the relevant state's statute of limitations for *personal injury actions*." *Redburn*, 898 F.3d at 496 (citing *Wilson*, 471 U.S. at 271) (emphasis added); *see also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) ("In *Wilson v. Garcia*, the Supreme Court held that § 1983 claims are subject to state personal injury statutes of

limitations.") (citing *Wilson*, 471 U.S. at 280).[7] As discussed, Louisiana's is one year. *See Smith*, 827 F.3d at 421; La. Civ. Code art. 3492. The Supreme Court has long rejected the practice, which Stringer advocates, of "seeking state-law analogies for particular § 1983 claims" because it creates "conflict, confusion, and uncertainty." *Owens*, 488 U.S. at 240 (quoting *Wilson*, 471 U.S. at 266).

Second, Stringer argues the limitations period was "tolled" by the Defendants' misrepresentations. She is mistaken here as well. While framed as tolling, Stringer's argument is really about discovery. The crux of her claim is that, despite being aware of the sewage backups since November 2011, she was "lulled . . . into a false sense of security" by the Town's claims it was taking steps to fix the problem.

This argument fails. Our precedent teaches that a cause of action accrues when the plaintiff learns the facts giving rise to her injury. *Piotrowski*, 51 F.3d at 516. In a takings claim, the injury consists in being denied enjoyment of one's property (usually through physical invasion) without just compensation.[8] This injury arises as soon as the invasion giving rise to the deprivation occurs. *See Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2170 (2019) ("We have long recognized that property owners may bring [takings] claims against the . . . [g]overnment as soon as their property has been taken."); *United States v. Dow*, 357 U.S. 17, 22 (1958) ("[T]he act of taking . . . is that

---

[7] If a state's law has more than one limitations period for different personal injury actions, "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *King-White*, 803 F.3d at 759 (quoting *Owens*, 488 U.S. at 249–50). That issue, however, is not presented in this case.

[8] *See Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 537 (2005) ("The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property."); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) ("The constitutional injury alleged . . . is not that property was taken but that it was taken without just compensation.").

event which gives rise to the claim for compensation . . . ."). Thus, Stringer's takings claim accrued when she first became aware of the sewage backups on her property.[9] The Town's promised fix does not change the fact that Stringer knew about the problem since November 2011, which started limitations ticking. Notably, Stringer does not claim the Town *concealed* the source of the backups from her, but only that it failed to follow through on fixing the problem. *See United Klans of Am. v. McGovern*, 621 F.2d 152, 153 (5th Cir. 1980) ("Fraudulent concealment tolls the statute of limitations.").

Stringer cites out-of-circuit cases for the notion that a government's remedial efforts, such as a "promise to abate physical invasions," can "delay[] the accrual of a takings claim." Relying principally on *Mildenberger v. United States*, 643 F.3d 938, 947–48 (Fed. Cir. 2011), and its supporting authorities, she argues that "empty assurances from the government" can delay accrual, because one should not be "penalize[ed] . . . for trying to cooperate with the government instead of immediately filing suit." Stringer misreads these cases. They concern takings that manifest over time, such as when government action slowly exacerbates property erosion.[10] The government's promising a remedy can delay accrual of a claim if it causes "justifiab[le] uncertaint[y]" over whether the plaintiff will ultimately be denied enjoyment of her property. *Mildenberger*, 643 F.3d at 947.[11] In other

---

[9] Stringer makes no argument in her principal brief that each discharge constitutes a discrete taking subject to its own one-year period. To the extent she tries to raise that argument in her reply brief, it is forfeited. *See United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016) ("[A]ny issue not raised in an appellant's opening brief is forfeited").

[10] *See, e.g., Banks v. United States*, 314 F.3d 1304, 1306 (Fed. Cir. 2003) (construction of jetties, interfering with the natural flow of sand and sediment to plaintiff's land, alleged to be a "gradual . . . intermittent[]" taking); *Applegate v. United States*, 25 F.3d 1579, 1583–84 (Fed. Cir. 1994) (describing the taking at issue—artificial exacerbation of natural erosion—as "continuous" but "very gradual"). Both *Banks* and *Applegate* are discussed in *Mildenberger*, 643 F.3d at 947.

[11] *See also Banks*, 314 F.3d at 1310 (government mitigation "appeared to . . . stave off the damaging [erosive] effects of . . . jetties [built by the government]," delaying accrual

words, a plaintiff need not file suit while it remains unclear whether government efforts might stave off a taking of her property.

That proposition does not apply here. When each backup occurred, Stringer had no doubt she had lost the use of her property. She immediately suffered the noxious effects (the "horrendous odor," her inability to cook food, wash dishes, and so on) that made her home temporarily uninhabitable.[12] The Town's promises to fix the problem did nothing to forestall the harm Stringer had already experienced. Thus, the "delayed accrual" doctrine from *Mildenberger* and similar cases has no application to Stringer's claimed injuries.

In sum, Stringer knew the Town was causing sewage to back up on her property in 2011, but she waited until 2019 to bring a § 1983 takings claim premised on those facts. Accordingly, we conclude the district court correctly dismissed her § 1983 takings claim as untimely.

**B**

We next consider Stringer's First Amendment retaliation claim, also subject to a one-year limitations period measured from when Stringer became aware of the underlying facts. *See Smith*, 827 F.3d at 421; *Redburn*, 898 F.3d

---

of takings claim until it became evident that the heightened erosion caused by the jetties "was permanent and irreversible"); *Applegate*, 25 F.3d at 1583 (unfulfilled government promises to build sand transfer plant, which would mitigate artificially-exacerbated erosion, "destroyed any predictability of the extent of damage to the [plaintiff's] land" and thus "stayed accrual of the [plaintiff's takings] claim").

[12] A deprivation need not be permanent to qualify as a taking. *See Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 26 (2012) ("Ordinarily . . . if government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking."); *see also First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 318 (1987) (discussing Supreme Court's "temporary takings" jurisprudence).

at 496. The district court concluded Stringer knew those facts as early as 2015. As set forth in her amended complaint, Stringer made the first of her "repeated complaints" about the Town's sewerage system in 2015 and Bradford began retaliating against her that same year. The court therefore held the limitations period expired in 2016, nearly three years before she filed suit in March 2019.

Stringer's sole argument on appeal is that the district court erred by not analyzing each instance of retaliation by Bradford as a discrete act, subject to its own one-year period. But parsing Stringer's allegations this way would not help her. She does not allege a single retaliatory act that occurred during the year before she filed suit. Instead, she vaguely alleges that Bradford "engaged in conduct . . . that caused [her] harm" "from 2015 to 2018," followed by a series of undated allegations that culminate in March 2018, when Stringer "finally . . . sent a certified letter . . . demanding the Town . . . stop the dumping of [sewage] on and near her property." Thus, Stringer's own complaint confirms that no retaliation occurred during the one-year limitations period from March 2018 to March 2019.

Stringer counters that the district court should have "reasonably infer[red] that at least one of the alleged acts of retaliation was perpetrated on or after March 18, 2018." But this stretches the charity afforded factual allegations past the breaking point. Courts must read well-pled allegations in a favorable light, but they need not "strain to find inferences favorable to the plaintiff[]." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). We will not invent an allegation within the one-year period to make up for Stringer's failure to plead one.[13]

---

[13] Were there any doubt, we need only look to Stringer's proposed second amended complaint, which the district court declined to file. That complaint appends dates to many of the previously undated retaliatory acts, but it alleges none in March 2018 or later. Indeed, the proposed complaint does not even present a retaliation claim, but instead repurposes these allegations to support the takings claim.

We therefore agree with the district court that Stringer's First Amendment retaliation claim was untimely.

## V

The district court correctly dismissed Stringer's § 1983 claims as untimely. But the court erred in dismissing her CWA citizen suit, because the Louisiana Sanitary Code is not a comparable statute capable of triggering the diligent prosecution bar in 33 U.S.C. § 1319(g). Accordingly, we reverse the judgment dismissing Stringer's CWA claim and remand for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED and REMANDED in part.